### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### (Southern Division)

|  |  |  |
|---|---|---|
| **JOHN DEMPSEY** | ) | |
| **8416 Dasher Court** | ) | |
| **Gaithersburg, Maryland 20882** | ) | |
|  | ) | |
| **Plaintiff,** | ) | |
|  | ) | |
| **v.** | ) | **No.  PJM-08-cv-2145** |
|  | ) | |
| **WASHINGTON METROPOLITAN** | ) | |
| **AREA TRANSIT AUTHORITY** | ) | |
| **600 Fifth St., N.W.** | ) | |
| **Washington, D.C. 20001** | ) | |
|  | ) | |
| **Defendant.** | ) | |
|  | ) | |

### DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WMATA'S PARTIAL MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff John Dempsey alleges that he was constructively discharged from his employment as a WMATA Stock Clerk, by reason of his disabilities, diabetes and hearing loss.  He alleges that the hearing loss was caused by loud noises in his workplace.  He is a member of Local Union 689,[1] but has not submitted these claims to the compulsory grievance and arbitration procedures of the Collective Bargaining Agreement ("CBA") between WMATA and the Union, which provides that an employee shall not be discharged without cause.

Defendant Washington Metropolitan Area Transit Authority ("WMATA") has moved to dismiss Counts I-IV of Plaintiff's Complaint pursuant to Fed. R. Civ. P.

---

[1]  Amalgamated Transit Workers, Local 689.

12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment on Counts II-IV

pursuant to Fed. R. Civ. P. 56, on the grounds that:  (1) WMATA is immune from suit

under the Americans with Disabilities Act ("ADA") and for the claims of Intentional

Infliction of Emotional Distress  Equitable Relief and Negligence pursuant to Section 80

of the WMATA Compact, Pub. L. No. 90-774, 80 Stat. 1324 (1966), codified at Md.

Code Ann. Transp. § 10-204(80); and (2) that Plaintiff's claims for Intentional Infliction

of Emotional Distress, Equitable Relief and Negligence are pre-empted by Section 66 of

the WMATA Compact, a federal labor law.  WMATA further moves, pursuant to Fed. R.

Civ. P. 12(f), to strike Plaintiff's claim for punitive damages on the grounds that WMATA

is also immune from punitive damages under Section 80 of the WMATA Compact.[2]

I.      **PLAINTIFF'S ALLEGATIONS**

        Plaintiff's Complaint purports to bring claims under the Americans with

Disabilities Act ("ADA")(Count I),[3] the Rehabilitation Act (Count V), and common law

torts of Intentional Infliction of Emotional Distress (Count II), "Equitable Relief" (Count

III), and Negligence (Count IV).  Only the Rehabilitation Act claim is properly before this

Court.

        Plaintiff alleges that he was discriminated against and constructively discharged

on account of his disabilities, diabetes, and hearing loss.  He was a Stock Clerk at the

_____

        [2]      The identical preemption and punitive damages issues are currently
pending and fully briefed in Taylor v. WMATA, No.  DKC-08-cv-2119 (D. Md.), before
Judge Chasanow.

        [3]      Although Count I is labeled "Title VII" it is clearly intended to be a claim
under the Americans with Disabilities Act, because plaintiff does not allege that he is a
member of any protected class under Title VII.

Shady Grove Shop of WMATA from 1998 (or 1999) to 2007.[4]   He was a member of

Local 689 of the Amalgamated Transit Workers Union at WMATA.  See Declaration of

Roberta Hamilton, attached as Exhibit 1 hereto.  Plaintiff was placed on disabled status

on May 21, 2006 because he was losing consciousness and passing out in the

workplace.   He was medically disqualified from work under Section 124 of the

Collective Bargaining Agreement ("CBA").  See Exhibit 2 hereto.  Under Section 124, an

employee who is physically disabled from his job is to be given first consideration for

the next available job for three years.  Id.  Plaintiff, however, was reinstated and retired

on November 1, 2007.  Hamilton Declaration, Exhibit 1.

I.   **WMATA HAS IMMUNITY EQUIVALENT TO A STATE UNDER THE ELEVENTH AMENDMENT**

WMATA is an interstate compact agency and instrumentality of Maryland,

Virginia, and the District of Columbia.  Lizzi v. WMATA, 255 F.3d 128, 130 (4th Cir.

2001), cert. denied, 534 U.S. 1081 (2002).[5]  Its purpose is to ensure the proper

functioning and operation of a mass transit system in the Washington, D.C. metropolitan

area.  See Morris v. WMATA, 781 F.2d 218, 219 (D.C. Cir. 1980).  WMATA's Compact

was approved by Congress in 1966.  Pub. L. No. 89-774, 80 Stat. 1324 (1966).  The

Compact is codified at Md. Code Ann., Transp. § 10-204.

WMATA possesses sovereign immunity.  Lizzi, 255 F.3d at 131.  The signatories

---

[4]   WMATA's files indicate that he was employed since 1979.  See Declaration of Roberta Hamilton, Exhibit 1 hereto.

[5]   Although Lizzi's holding was partially narrowed by Nevada Dept. of Human Resources v. Bibbs, 565 U.S. 538 (2003), its discussion of WMATA's immunity still remains good law and was affirmed by the Fourth Circuit's approach to WMATA's immunity in Smith v. WMATA, 290 F.3d 201 (4th Cir. 2002).

of the Compact intended to confer sovereign immunity on WMATA. Id.; see also Delon Hampton & Assoc. v. WMATA, 943 F.2d 355, 359 (4th Cir. 1991).   Both the Fourth and D.C. Circuits have held that sovereign immunity may attach to WMATA's actions.  Lizzi, 255 F.3d at 131; Morris, 781 F.2d at 220.   WMATA is a state agency, subject to all the benefits and liabilities of a state itself, including sovereign immunity.  Id.

The Fourth Circuit in Lizzi specifically noted that it agreed with the D.C. Circuit's line of cases beginning with Morris and rejected the plaintiff's argument that the D.C. Circuit had wrongly interpreted the immunity of WMATA under Section 80 of the Compact.  Lizzi, 255 F.3d at 133.  Thus, the Fourth Circuit would likely follow the holdings of Jones v. WMATA, 205 F.3d 428, 432 (D.C. Cir. 2000)(WMATA immune from suit under Age Discrimination in Employment Act); Beebe v. WMATA, 129 F.3d 1283, 1384-85 (D.C. Cir. 1997)(WMATA immune from suit alleging constrictive discharge); Souders v. WMATA , 48 F.3d 546, 551 (D.C. Cir. 1995)(WMATA immune from nuisance suit); Sanders v. WMATA, 819 F.2d 1151, 1153 (D.C. Cir. 1987)(WMATA immune from suit alleging negligent termination and violation of federal statue).  Accordingly, this Court should give special deference to the D.C. Circuit's decisions governing WMATA's immunity.  Accord Smith v. WMATA, 290 F.3d at 207 n.9 ("We recently recognized that a proper consideration in construing the Compact is the maintenance of consistency between the legal interpretations of the 'two federal circuits most likely to hear cases in which [METRO] is a party, "i.e., this Court and the Court of Appeals for the District of Columbia.")(citing Lizzi).

II.   **WMATA IS IMMUNE FROM SUIT UNDER THE ADA AND FOR CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE**

A.     WMATA is Immune from Suit Under the ADA

In Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 357 (2001), the Supreme Court held that, under the Fourteenth Amendment, private individuals are not authorized to recover money damages under the ADA from a state through suit in federal court.  Id. at 574.  The Supreme Court held that Congress had likewise exceeded its authority to abrogate the states' Eleventh Amendment immunity from ADA liability in Kimel v. Florida Board of Regents, 528 U.S. 62 (2000).  See also  Jones v. WMATA, 205 F.3d 428 (D.C. Cir. 2000)( WMATA was immune from suit under the ADEA).  Jones was specifically approved by the Fourth  Circuit in Lizzi, 255 F.3d at 134.

Judge Friedman of the U.S. District Court for the District of Columbia addressed WMATA's immunity from suit under the ADA in Hopps v. WMATA, 480 F. Supp. 2d 243, 256 (D.D.C. 2007), dismissing plaintiff's ADA claims under grounds of sovereign immunity.  This Court should follow Judge Friedman's approach, which is consistent with the Supreme Court decisions, Fourth Circuit, and D.C. Circuit decisions on WMATA's immunity, and dismiss Plaintiff's ADA claim.

B.     WMATA is Immune From Suit For Intentional Infliction of Emotional Distress.

In Hopps, Judge Friedman similarly held WMATA immune from liability for intentional infliction of emotional distress.  Because these claims must arise out of a supervisor's conduct, the Hopps court noted that "[t]he WMATA Compact confers upon WMATA broad authority regarding its personnel practices." Id.  Citing  Burkhart v.

5

WMATA, 112 F.3d 1207, 1217 (D.C. Cir. 1987), Judge Friedman held the that "the

hiring, training and supervision of WMATA employees are governmental function and

thus are immune from further review." Hopps, F. Supp. 2d at 255.   This Court should

follow Hopps and dismiss the intentional infliction claim as well.

> C.   WMATA is Immune from Suit on Plaintiff's Negligence Claim

As with the intentional infliction claim, Plaintiff's negligence claim attacks

WMATA's discretionary acts relating to the "hiring, training, and supervision of WMATA

employees [which] are discretionary in nature and thus immune from judicial review."

Beebe, 129 F.3d at 1287 (citing Burkhart, 112 F.3d at 1217).  "The Compact confers

broad powers on WMATA to 'create and abolish offices, employments and positions . . .

provide for the qualification, appointment, [and] removal . . . of its . . . employees, [and]

establish, in its discretion, a personnel system based on merit and fitness." Beebe, 129

F.3d at 1287 (quoting Compact, § 12 and Burkhart, 112 F.3d at 1217).  All of these

authorities require the dismissal of the negligence claim as well.

III.   **THE CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENT TERMINATION ARE PREEMPTED BY FEDERAL LABOR LAW.**

Counts II (Intentional Infliction) and Count IV (negligent termination) are

preempted by Federal labor law.  In order to enable WMATA to accomplish its mission,

the Congress, in consenting to the WMATA Compact, gave WMATA certain special

powers and duties, including a wholly self-contained, self-regulating labor relations

statute which provides for collective bargaining on virtually any issue arising between

labor and management and, failing a negotiated resolution, compulsory, final, and

binding arbitration of all labor disputes.  This process was, and is, intended to ensure

that no work stoppages occur on the mass transportation system for the Nation's

Capital.  Thus, in 1972, Congress enacted the National Capital Transportation Act

(NCTA) which authorized WMATA to become an operating agency.  Pub. L. No. 92-329,

Section 51 and 66, 86 Stat. 464, codified at Md. Code Ann., Transp. § 10-204(4) and

D.C. Code §§ 9-1107.01 (4) (2002).  Congress added a virtually new section to the

Compact, Section 66, to insure smooth labor relations between the transit workers and

WMATA.  Md. Code Ann., Transp. § 10-204(66) and D.C. Code § 9-1107.01(66) (2001).

Congress insisted on labor peace for mass transit in the nation's capital.  This was to be

accomplished through ". . . a policy defining labor's right to organize, to bargain

collectively, [and] to arbitrate disputes . . . ."[6]  Congress adopted a very broad definition

of the term "labor dispute" thereby authorizing arbitration of all the matters at issue in

this lawsuit.

Section 66 of the Compact provides in relevant part:

(c)  In case of any labor dispute involving the Authority and such
employees where collective bargaining does not result in agreement, the
Authority shall submit such dispute to arbitration . . . .  The term "labor
dispute" shall be broadly construed and shall include any controversy
concerning wages, salaries, hours, working conditions, or benefits
including health and welfare, sick leave, insurance or pension or retirement
provisions but not limited thereto, and including any controversy
concerning any differences or questions that may arise between the parties
including but not limited to the making or maintaining of collective
bargaining agreements... and any grievance that may arise and questions
concerning representation.

The D.C. Circuit has held that Section 66 is a federal labor law that must be

governed by the common law of labor arbitration.  Office and Professional Employees

---

[6]See H.R. Rep. No. 1155, 92d Cong., 2d Sess., 9 (1972).

Intern'l. Union, Local 2 v. WMATA, 724 F.2d 133, 139 (D.C. Cir., 1983)("OPEIU, Local 2"); Edwards v. WMATA, Slip Op. No. 86-1312 at 3, n.3 (D.D.C. December 29, 1986)(H. Greene, J.)(copy attached as Exhibit 3).

In Edwards, Judge Greene held that the plaintiff's claim that she was "negligently suspended" was preempted by Section 66 of the Compact, and therefore by the provisions of federal labor law under Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985).  The plaintiff argued that because  her claim was predicated in tort, not contract, preemption did not apply.  The court disagreed, holding that such an argument "would unduly . . . narrow the scope of the decision in Allis-Chalmers."  Slip Op. at 3.

In Allis-Chalmers, the Court held that a state law tort action for alleged bad faith handling of a claim against the employer and insurer which administered the disability insurance plan included in collective bargaining agreement was preempted by Section 301 of the Labor Management Relations Act ("LMRA").  As the Court stated in Steelworkers v. Rawson, 495 U.S. 362, 368 (1990):

> [Section] 301 is a potent source of federal labor law, for though state courts have concurrent jurisdiction over controversies involving collective bargaining agreements . . . state courts must apply federal law in deciding these claims, . . . and indeed, any state-law cause of action for violation of collective bargaining agreements is entirely displaced by federal law under § 301. . . .

In Allis-Chalmers, the Supreme Court stated an expansive preemption doctrine:

> If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations.  These policies require that "the relationships created by [a collective-bargaining] agreement" be defined by application of "an evolving federal common law grounded in national labor policy."

8

471 U.S. at 210-11.[7]

"The Court in Allis-Chalmers considered two factors in determining whether a particular state action is preempted: (1) whether the state tort claims would frustrate the federal labor law-contract scheme established by the federal labor statute; and (2) whether Congress intended that the federal labor law remedy be exclusive and comprehensive." Edwards, slip op. at 3 (citing Allis-Chalmers, 471 U.S. at 209).

In the case at bar, Plaintiff claims intentional infliction of emotional distress and negligence arising out of an alleged disability determination under Section 124 of the CBA. An action sounding in contract or tort would undermine the scheme established by Congress because it would allow judges to substitute their judgment for a determination made by an arbitrator under the contractual just cause standard.

The second test of Edwards and Allis-Chalmers is satisfied by the D.C. Circuit's recognition in OPIEU, Local 2 of the broad definition that Congress established for "labor disputes" in the Compact, as including "a vast range of nontraditional issues [that] are subject to arbitration." OPEIU, Local 2 at 137 This includes any and all of the

---

[7]The Supreme Court's decision in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), also emphasizes the broad nature of preemption for actions challenging unfair labor practices. In Garmon, the Court considered the state court's jurisdiction over an action challenging a union's peaceful picketing of an employer to compel it to execute a union-shop contract. The National Labor Relations Board had not decided, and it was not clear, whether the union's conduct was protected under Section 7 of the National Labor Relations Act ("NLRA") or prohibited by section 8 thereof. Focusing on this uncertainty, the Court held that "When an activity is arguably subject to section 7 or section 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with National policy is to be averted." Id. at 244-45. The Court underscored that the preemption doctrine applied even where there was only a *potential* for conflict. Id. at 246.

allegations against WMATA, including "any controversy concerning wages, salaries, hours, working condition, or benefits . . . and including any controversy concerning any differences or questions that may arise between the parties . . . ." Id. (quoting § 66 of the Compact).  All of Plaintiff's claims against the WMATA Defendants are encompassed by the broad catch all provision of this clause of Section 66 as enacted by Congress.

Accordingly, as held by the D.C. Circuit in OPEIU Local 2 and Judge Greene in Edwards, the tort claims should be dismissed on preemption grounds as well.

## IV.   THE EQUITABLE RELIEF CLAIM IS NOT A CAUSE OF ACTION

Plaintiff's Third Claim for Relief is for "Equitable Relief."  This is not a separate claim upon which relief may be granted; it is a potential remedy for the sole remaining Rehabilitation Act claim.

## V.   WMATA IS IMMUNE FROM SUIT FOR PUNITIVE DAMAGES

In City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267 (1981), the Supreme Court held that governmental entities were immune from claims for punitive damages in a case arising under 42 U.S.C. § 1983, stating:

> [P]unitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill.  Neither reason nor justice suggests that such retribution be visited upon the shoulders of blameless or unknowing taxpayers.  (Footnote omitted).

See also Finkelstein v. District of Columbia, 593 A.2d 591, 599 (1991) (en banc).

("punitive damages may not be awarded against the District of Columbia"); Herilla v.

<u>Mayor and City Council of Baltimore</u>, 37 Md. App. 481, 378 A.2d 162, 169-70

(1977)(punitive damages not available against municipality under Maryland law);

<u>Wainwright v. WMATA</u>, 958 F. Supp. 6, 7 (D.D.C. 1997) ("punitive damages are

unavailable against WMATA"); <u>Excavation Constr., Inc. v. WMATA</u>, 624 F. Supp. 582,

588 (D.D.C. 1984) ("WMATA is not, as a matter of law, subject to an award of punitive

damages against it").   The drafters of the WMATA Compact nowhere waived WMATA's

immunity from punitive damages.   Moreover, the ADA and the Rehabilitation Act do not

provide for punitive damages against a governmental entity, much less an entity like

WMATA, which has sovereign immunity.   Plaintiff's claim for punitive damages must be

dismissed.

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, Counts I-IV should be dismissed on grounds of sovereign immunity.  In addition, Count III should be dismissed for failure to state a claim, and Counts II and IV are preempted by Section 66 of the WMATA Compact, a federal labor law.  Lastly, the punitive damages claims should be stricken on grounds of sovereign immunity.

Respectfully submitted,

Carol B. O'Keeffe #04204
General Counsel


_____/s/_____
David J. Shaffer #13055
Assistant General Counsel
WMATA
600 Fifth St., N.W.
Washington, D.C. 20001
(202) 962-2820
(201) 962-2550 (fax)
Dshaffer@wmata.com
Attorneys for Defendant WMATA