## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | | |
|---|---|---|
| **JOHN DEMPSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. PJM-08-cv-2145** |
| | ) | |
| **WASHINGTON METROPOLITAN** | ) | |
| **AREA TRANSIT AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### WMATA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION.

This is a case brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which prohibits discrimination "solely on the basis" of disability. Plaintiff John Dempsey has brought this case against Defendant Washington Metropolitan Area Transit Authority ("WMATA"), alleging that WMATA violated the Rehabilitation Act by failing to accommodate his disabilities of diabetes and hearing loss and constructively discharging him in violation of the Act.

WMATA brings this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, on the grounds that there is no genuine issue of material fact that WMATA accommodated plaintiff's alleged disabilities and that even if it did not, any such failure was not the sole basis for his decision to retire. Although WMATA disputes that plaintiff had disabilities within the definition of the Rehabilitation Act, it assumes for purposes of this Motion, that these medical conditions were covered

disabilities under the Act, and will demonstrate that there is no material disputed issue of fact that they were accommodated. Accordingly, such alleged failure cannot form the basis of a constructive discharge claim. Furthermore, WMATA will demonstrate that, even if a genuine issue of material fact exists as to whether the disabilities were accommodated, plaintiff cannot carry his burden under the Rehabilitation Act by demonstrating a material issue of fact that any such alleged failure was the sole basis for his retirement. Indeed, the record demonstrates that Plaintiff began looking for another job before his allegedly constructive discharge and that his conduct on the job was, at the very least, a motivating factor in the actions he alleges WMATA took against him.

## II.   **FACTUAL BACKGROUND**.

Plaintiff was a Stock Room Clerk A at the Shady Grove facility at WMATA. First Amend. Complaint ¶ 5. He was a member of Local 689 of the Amalgamated Transit Workers Union. At the Shady Grove location, WMATA repairs and maintains a portion of its rail car fleet. Bertagnolli Deposition, Exh. B at 14-15. The facility is a three story concrete building. Id. Dempsey Deposition Exh. A at 42. Plaintiff worked on the lower level. Bertagnolli Dep Exh. B at 14-15. At the facility, rail cars are placed on lifts and raised so that they can be worked on by maintenance personnel. Loud bells sound when the lifts are raising so that everyone is satisfied to avoid harm. Betagnolli Declaration, Exh. C at ¶ 5. The volume of these bells are within the limits set by the Maryland Occupational Safety and Health Administration ("MOSH"). Exh. D.

In addition to handing out materials and parts and maintaining inventory, part of Dempsey's job was to "operate[] a variety of machinery and self-propelled material handling equipment including pallet trucks, hand trucks, forklifts, stock pickings, including wire cutting equipment in a careful and safe manner at all times." Job Description, Exh. E. Dempsey was required to use forklifts to unload trucks and move pallets of material. Dempsey Dep., Exh. A at 60.

WMATA does not dispute that Dempsey had Type I diabetes and had some degree of hearing loss. He wore a hearing aid. Mr. Dempsey has used insulin to control his diabetes since age 12. Dempsey Dep., Exh. A at 99. He is required to check his blood sugar levels 8-12 times daily. Dempsey Dep., Exh. A at 81. As long as his blood sugar levels are properly maintained, he can engage in any physical activity he chooses. Dempsey Dep., Exh. A at 82. He can drive a car. Id. at 84-85. He does not contend that his hearing loss interfered with his ability to perform his job, but he filed a workers' compensation claim alleging that his hearing loss was due to the loud noises in the workplace. Id. at 21. WMATA denied the claim. Id. He did not appeal the denial. Id.

Periodically, Dempsey had episodes at work where he became hypoglycemic and disoriented. Dempsey Dep., Exh. A, at 141-42. Dempsey's medications for high blood pressure and diabetes were not working together properly. First Amended Complaint ¶ 19. Often fellow employees gave him food, candy or glucose for his diabetes. Bertagnolli Declaration at ¶ 4. Frequently, WMATA made 911 calls because of these episodes. Id. at ¶ 2. Dempsey's interpersonal relations

with his co-workers became a problem and he was counseled about his inability to get along with others.  Exh. F; Dempsey Depo, Exh. A. at 66.

In early 2006, the frequency of Plaintiff's episodes increased and he suffered an hypoglycemic attack while driving a forklift.   Bertagnolli Declaration at ¶5; Dempsey Deposition at 92-93. The forklift became pinned against a wall and Plaintiff had to be rescued.  Bertagnolli Decl. at ¶ 5; Dempsey Dep., Exh. A at 92. Because of the forklift incident, his supervisor required him to report to WMATA's Medical Office for a medical evaluation.  Exh. C hereto at ¶ 5.  Following the evaluation, Dr. Desmond Johnson ruled him medically disqualified to perform the duties of a stockroom clerk.  Johnson Dep., Exh. O at 152-53.  He was placed on what is known as "Section 124" status, which references section 124 of the Local 689 Collective Bargaining Agreement ("CBA"). Section 124 provides for the placement of a medically disqualified employee on leave status for three years, during which time the employee receives is eligible to apply for other jobs within WMATA. See Exh. H (Section 124 of the CBA).  Dempsey Dep., Exh. A at 197. Dr. Johnson determined that, in his medical opinion, Mr. Dempsey posed a significant risk to himself and others in performing the essential functions of the position.  Johnson Dep., Exh. O. at 97-101; 152-53.

Dempsey's personal physician disagreed with Dr. Johnson's diagnosis and the conclusion regarding the risk his unstable diabetes posed. See Exh. I hereto. Therefore, Dr. Johnson arranged to have Dempsey examined by a third, independent endocrinologist, Dr. Naglieri.  Dr. Naglieri found that Dempsey had

corrected the medical issues that had caused the problems, and, accordingly, WMATA returned Dempsey to duty in September 2006.  Exh. K.  Dempsey filed a grievance to recover lost benefits during the period of his Section124 leave and WMATA agreed to reinstate the benefits.  Exh. L.

After his return to work, Dempsey's problems with his co-workers remained a problem, and his supervisor continued to receive complaints from his co-workers. Exh. M; Jeffreys Dep., Exh. N at 85-86.  On January 4, 2007, Mr. Dempsey was referred for medical evaluation again, but Dr. Johnson found him still able to perform his job based upon his doctor's certification.  Exh. O.  In November 2007, his conduct reached a breaking point during an event where he refused to unload a truck because it would require him to work overtime.  Dempsey Dep., Exh. A at 62. Bertagnolli Declaration, Exh. C at ¶ 7.

Dempsey alleges that he was told to retire or be terminated.  Dempsey Dep., Exh. A at 60.  Dempsey retired and, within three months, was re-employed as a postal worker, a job for which he had applied before he decided to retire from WMATA.  Dempsey Dep., Exh. A at 119, 121.  He applied for the post office job "because [he] didn't much care for the stress" on the job at WMATA.  Dempsey Dep., Exh. A at 121.

Dempsey focuses his case on two events:  WMATA's placing him on Section 124 leave and his voluntary decision to retire, both of which he contends occurred because of his disabilities of diabetes and hearing loss.   He also alleges that

WMATA failed to accommodate these disabilities, thereby forcing his decision to retire.

III.   **STANDARD FOR SUMMARY JUDGMENT.**

Summary judgment is appropriate if there is no genuine issue of material fact that could lead a rational trier of fact to find for the non-moving party. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court should view all evidence in the light most favorable to the non-moving party and must draw all justifiable inferences in favor of the non-moving party. See Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Only factual disputes capable of affecting the outcome of a case under governing law will preclude summary judgment. See Anderson, 477 U.S. at 248.

The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact and that summary judgment is warranted. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party does not bear the burden of proof at trial, and that party demonstrates an absence of evidence to support an essential element of the non-moving party's case, and the non-movant fails to make a sufficient showing in response, the moving party is entitled to

summary judgment. See Celotex Corp., 477 U.S. at 322-23. In contrast, when the movant bears the burden of proof at trial, he "must do more than put the issue into genuine doubt; indeed, [he] must remove genuine doubt from the issue altogether." Hoover Color Corp. v. Bayer Corp., 199 F.3d 160, 164 (4th Cir. 1999) (quoting Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1425-26 (11th Cir. 1990)).

Summary judgment should be granted if the movant's submissions in support of the motion demonstrate an absence of a genuine dispute and the non-movant's response fails to raise a genuine issue of material fact. See Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 617-18 (2d Cir. 1998); Nat'l State Bank v. Fed'l Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992); Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986).

## IV. THE REHABILITATION ACT PROHIBITS DISCRIMINATION SOLELY ON THE BASIS OF DISABILITY.

The Rehabilitation Act of 1973 provides, in relevant part:

> Promulgation of rule and regulations.   No otherwise qualified individual with a disability in the United States, as defined in section 7(20) shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .

29 U.S.C. § 794(a) (emphasis added).

The Rehabilitation Act provides that "no otherwise qualified individual with a disability" may be discriminated against "solely by reason of her of his disability."

7

See 29 U.S.C. § 794(a).  Unlike the Americans with Disabilities Act (ADA), which only requires the employee to show that his/her disability or handicap was a factor in the alleged adverse employment action, under the Rehabilitation Act, Dempsey is required to show that his alleged disability was the sole reason for WMATA's action.  See Soledad v. United States Dep't of Treasury, 304 F.3d 500 (5th Cir. 2002).  In Soledad, the Court of Appeals clarified the difference in standards of causation between the Rehabilitation Act and the ADA, rejecting plaintiff's contention that in the 1992 amendments to the Rehabilitation Act, Congress intended to make the Rehabilitation Act conform to the ADA's standard for causation. In so finding, the Fifth Circuit considered whether Congress intended to repeal the "solely by reason of" language of § 794(a) when it amended the statute to add § 794(d), and concluded that, if Congress intended to adopt the ADA standard of causation, it could have removed the more specific "solely by reason of" provision, but did not do so.  Id. at 505.  Therefore, the Soledad court affirmed the district court's decision to set aside as improper its jury instruction that liability could be found if the plaintiff showed that his disability was a motivating factor influencing the decision, and instead determined that the proper question to ask in a Rehabilitation Act claim is whether the discrimination took place "solely because" of the disability.  Id.

This Circuit has taken a similar approach.  See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498, n.17 (4th Cir. 2005) (contrasting the requirement under the ADA where an employee must demonstrate

that the employee's disability was a "motivating factor" in the employer's decision with the more stringent requirement under the Rehabilitation Act, which by its terms requires a plaintiff to show that disability was the sole reason for the adverse employment action); Peebles v. Potter, 354 F.3d 761, 767 n.5 (8th Cir. 2004) ("the discrimination has to occur 'solely by reason of his or her disability,'" citing statute and case law to support the proposition that Rehabilitation Act claims are analyzed in a similar manner to ADA claims, except that the Rehabilitation Act imposes a requirement that a person's disability serve as the sole impetus for a defendant's adverse action against plaintiff).

## V.  THE SECTION 124 LEAVE WAS REQUIRED BECAUSE DEMPSEY POSED A DIRECT THREAT OF HARM TO HIMSELF AND OTHERS.

With the exception of the causation standard required to state a claim, (i.e., the "solely because of" standard), Rehabilitation Act cases are guided by the same principles as the ADA. Woodruff v. Peters, 482 F.3d 521, 526 (D.C. Cir. 2007); Breen v. Dept. of Transp., 282 F.3d 839, 841 (D.C. Cir. 2002); Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998), rev'd on other grounds, Barnes v. Gorman, 536 U.S. 181 (2002). The ADA establishes a defense to a claim of disability discrimination if the individual poses a direct threat to the health or safety of himself or others. 29 C.F.R. § 1630.15(b)(2). "Direct threat" is defined as

> a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a

reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered:

(1) The duration of the risk;

(2) The nature and severity of the potential harm;

(3) The likelihood that the potential harm will occur; and

(4) The imminence of the potential harm.

29 C.F.R. § 1630.2(r).

The facts of this case readily meet this standard. On April 24, 2006, at the time Dr. Johnson made his decision to medically disqualify Mr. Dempsey (1) the duration of the risk was daily; (2) the nature and severity of the injury if Mr. Dempsey lost control of a forklift again was immediate and serious; (3) the likelihood of a repeat incident was high due to the number of reports of Mr. Dempsey's hypoglycemic episodes on the job; and (4) the potential harm was imminent.

WMATA is also entitled to consideration of the "job description" defense set forth in the ADA, which provides that: "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

Plaintiff acknowledged during his deposition that the duties of operating a forklift and heavy machinery were essential functions of his job, and he

acknowledges the accuracy of his job description.  Dempsey Dep., Exh. A at 148.

Although his increasing inability to get along with his co-workers was certainly an

impediment to his job performance, when he became a direct threat to their safety,

as well as his own, when operating a forklift, a medical evaluation was reasonable.

Accordingly, plaintiff cannot meet his burden of showing that his disqualification

for medical reasons was a violation of the Rehabilitation Act solely because of his

disability, rather than the employer's reasonable concern for the safety of Plaintiff

and others.

## VII.   WMATA REASONABLY ACCOMODATED ANY DISABILITY AND THEREFORE DEMPSEY WAS NOT CONSTRUCTIVELY DISCHARGED.

### A.   WMATA Reasonably Accommodated Plaintiff's Alleged Disabilities.

Plaintiff claims two disabilities:  diabetes and hearing loss.  In September

2006, he made a formal request for accommodation of these disabilities through

WMATA's procedures.  Dempsey Dep., Exh. A at 104; see Exh. P (P/I).  With

respect to the diabetes, he requested time to check his blood sugar and eat small

amounts of food during the day. Dempsey Dep., Exh. A at 117.  WMATA had

previously allowed that accommodation, Dempsey Dep. at 104; thus no

accommodation was necessary.  See Exh. Q.  With respect to his hearing loss,

plaintiff requested that the volume of the bells be lowered and he filed a complaint

with Maryland Occupational Safety and Health Administration (MOSH).  MOSH did

an inspection and found that the bells were within its guidelines.  Exh.  Despite

this, WMATA Superintendent Bert Bertagnolli, placed rags in the speakers and bells

to lower their volume to accommodate Dempsey's concerns.  Dempsey Dep. at 47.

Bertagnolli Declaration, Exh. C at ¶ 6.  Dempsey complained no further.  Given that Mr. Dempsey's disabilities were reasonably accommodated by WMATA, he cannot now be heard to complain that either his diabetes or hearing problem was the cause of his alleged constructive discharge.

B.   Plaintiff Cannot Meet the Fourth Circuit's
Standard for Constructive Discharge.

In the Fourth Circuit, constructive discharge occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." Johnson v. Sullivan, 764 F. Supp. 1053, 1067 (D. Md. 1991) (citing Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir. 1984). "Deliberateness can be demonstrated by actual evidence of intent by the employer to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment." Johnson v. Shalala, 991 F.2d 126, 131 (4th Cir. 1993), citing EEOC v. Clay Printing Co., 955 F.2d 936, 944-46 (4th Cir. 1992). "To state a claim of constructive discharge, [Plaintiff's] complaint must state that the [Defendant's] actions were deliberate and created intolerable working conditions." See also Lyons v. Peake, 2009 U.S. Dist. LEXIS 69894 at 10 (D. Md. Aug. 10, 2009) (citing Johnson v. Sullivan, 764 F. Supp. at 1067). "Furthermore, the Fourth Circuit has cautioned that [b]ecause the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined." Catrino v. Town of Ocean City, 2009 U.S. Dist. LEXIS 59783 at 16 (D. Md. July 14, 2009) (quoting Honor v. Booz-Allen & Hamilton,

Inc., 383 F.3d 180, 187 (4th Cir. 2004)).  Plaintiff Dempsey cannot meet this heightened burden of proof so as to survive summary judgment.

Dempsey's explanation for applying to the postal service and retiring was that he "didn't much like the stress."  Even if one accepts Dempsey's uncorroborated statement that WMATA told him to retire or be terminated, WMATA has established uncontradicted evidence of Dempsey's performance deficiencies that belie his assertion that the sole reason for WMATA's encouraging his retirement was his disability, rather than his performance.  His "stress" on the job does not meet the Fourth Circuit's strict standard for constructive discharge and WMATA is entitled to summary judgment on this claim.

## VI.    __CONCLUSION__.

Dempsey cannot come forward with evidence to create a material issue of fact that the _sole_ reason for his being placed on Section 124 status was his disability, rather than WMATA's legitimate business concern that he posed a direct threat to himself and others unless his diabetes was brought under control.  Once is diabetes became controlled, WMATA reinstated him and he voluntarily retired.  By his own admission, he was allowed to take necessary breaks to check his blood sugar and eat snacks on the job.  Also, by his own admission, WMATA took steps to lower the volume of the bells and loudspeakers, and it is undisputed that the bills were within OSHA standards.  Even if plaintiff subjectively felt that job stress caused him to make the decision to retire, he cannot show that his stress was

<u>solely due to his disability</u>.   Accordingly, summary judgment should be granted in favor or WMATA.

Respectfully submitted,

Carol B. O'Keeffe #04202
General Counsel

Mark F. Sullivan #17690
Deputy General Counsel

/s/ David J. Shaffer          
David J. Shaffer #13055
Assistant General Counsel
600 Fifth St., N.W.
Washington, D.C. 20001
(202) 962-2820
Attorney for Defendant WMATA
<u>dshaffer@wmata.com</u>