## IN THE UNITED STATES DISTRICT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | | |
|---|---|---|
| **JOHN DEMPSEY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil No.: 08-2145 (PJM)** |
| | * | |
| **WMATA,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff John Dempsey, by and through undersigned counsel, respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment as set out more fully in the accompanying Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Statement of Material Facts in Dispute, and supporting exhibits.

Respectfully submitted,

GEBHARDT & ASSOCIATES, LLP.

By:    /s/ *Donna Williams Rucker*
Donna Williams Rucker, #04180
1101 17th Street, N.W.
Suite 807
Washington, DC  20036-4716
(202) 496-0400 (ph)
(202) 496-0404 (fax)
ruck92@aol.com
drucker@gebhardtlaw.com

October 30, 2009                 Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that the foregoing Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Statement of Material Facts as to Which There Are Genuine Issues in Dispute, and Exhibits were served electronically served by the U.S. District Court for the District of Maryland Electronic Document Filing System (ECF) on this 30th day of October, 2009, upon the following:

>    David James Shaffer, **Esquire**
>    Washington Metropolitan Area Transit Authority
>    600 Fifth Street, N.W.
>    Washington, DC 20001
>    dshaffer@wmata.com


>    Respectfully submitted,
>
>    GEBHARDT & ASSOCIATES, LLP.
>
>    /s/ *Donna Williams Rucker*
> By:    Donna Williams Rucker, #04180
>    1101 17th Street, N.W.
>    Suite 807
>    Washington, DC  20036-4716
>    (202) 496-0400 (ph)
>    (202) 496-0404 (fax)
>    ruck92@aol.com
>    drucker@gebhardtlaw.com

October 30, 2009                              Counsel for Plaintiff

2

**IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | | |
|---|---|---|
| **JOHN DEMPSEY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil No.: 08-2145 (PJM)** |
| | * | |
| **WMATA,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

## TABLE OF CONTENTS

Page No.

TABLE OF EXHIBITS     5

STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE ARE GENUINE ISSUES IN DISPUTE     7

PLAINTIFF'S RESPONSE TO DEFENDANT'S
FACTUAL BACKGROUND     9

I.     FACTUAL AND PROCEDURAL HISTORY     14

II.     GOVERNING STANDARD OF REVIEW FOR
SUMMARY JUDGMENT     16

III.     ARGUMENT

     A.     Plaintiff has presented sufficient evidence to establish
that a jury would find that he was qualified for his job
and that his diabetes and work-related hearing loss are
disabilities under the Rehabilitation Act.     17

     B.     Plaintiff has produced sufficient evidence in support of
his failure to accommodate claim under the
Rehabilitation Act.     22

   1. Defendant has not shown that it met its legal
    duty to reasonably accommodate Plaintiff's
    disability (diabetes).         22

   2. Defendant has not shown that it met its legal
    duty to reasonably accommodate Plaintiff's
    disability (hearing loss).        24


  C. Plaintiff has produced sufficient evidence in support of
   his hostile work environment claim.      26

IV. CONCLUSION

         Respectfully submitted,

         GEBHARDT & ASSOCIATES, LLP.

         */s/ Donna Williams Rucker*
     By: Donna Williams Rucker, #04180
       1101 17th Street, N.W.
       Suite 807
       Washington, DC  20036-4716
       (202) 496-0400 (ph)
       (202) 496-0404 (fax)
       ruck92@aol.com
       drucker@gebhardtlaw.com

October 30, 2009      Counsel for Plaintiff

4

**IN THE UNITED STATES DISTRICT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| **JOHN DEMPSEY,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | *    **Civil No.: 08-2145 (PJM)** |
| | * |
| **WMATA,** | * |
| | * |
| **Defendant.** | * |
| | * |

## TABLE OF EXHIBITS

Exhibit 1, Amended Complaint

Exhibit 2, John Dempsey Deposition

Exhibit 3, Roslyn Rikard Deposition

Exhibit 4, Henry Bertagnolli Deposition

Exhibit 5, Desmond F. Johnson, M.D. Deposition

Exhibit 6, James T. Wynne Deposition

Exhibit 7, Job Description for Storeroom Clerk A

Exhibit 8, WMATA Americans with Disabilities Act Employment Policy Instruction

Exhibit 9, Plaintiff's Reasonable Accommodation Requests

Exhibit 10, Letter from Valerie Sutton, Certified Clinical Audiologist, dated May 31, 2005, with audiogram attachment

Exhibit 11, Photos of bull horn and muffled bell

Exhibit 12, Letter from Dr. Rosalie Naglieri, dated 9/15/06

Exhibit 13, Letter from Dr. Majd Hakim, dated July 7, 2006

<u>Exhibit 14</u>, Email from Lawrence Chavis re: John Dempsey, dated 9/29/2006

Respectfully submitted,

GEBHARDT & ASSOCIATES, LLP.

By:     _/s/ Donna Williams Rucker_
Donna Williams Rucker, #04180
1101 17th Street, N.W.
Suite 807
Washington, DC  20036-4716
(202) 496-0400 (ph)
(202) 496-0404 (fax)
ruck92@aol.com
drucker@gebhardtlaw.com

October 30, 2009                   Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| **JOHN DEMPSEY,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | *  **Civil No.: 08-2145 (PJM)** |
| | * |
| **WMATA,** | * |
| | * |
| **Defendant.** | * |
| | * |

**STATEMENT OF MATERIAL FACTS AS TO**
**WHICH THERE ARE GENUINE ISSUES IN DISPUTE**

1.  Plaintiff was constructively discharged from WMATA on or around November 2007. Exhibit 2, Dempsey Deposition at 32, 34

2.  Plaintiff was subjected to a hostile work environment by his coworkers. Exhibit 2, Dempsey Deposition at 25.

3.  Prior to the change in his medication, Plaintiff diabetes was not a problem. Exhibit 2, Dempsey Deposition at 28.

4.  Plaintiff was medically able to be reinstated to his position in July 2006. Exhibit 2, Dempsey Deposition at 31; Exhibit 13, Letter for Dr. Hakim, dated July 7, 2006

5.  Plaintiff involuntarily resigned from his position as a Stock Clerk with WMATA in November 2007. Exhibit 2, Dempsey Deposition at 32, 34.

6.  Plaintiff's Type 1 insulin-dependant diabetes qualifies as a disability under the Rehabilitation Act. Exhibit 1, Amended Complaint ¶ 19; Exhibit 2, Dempsey Deposition at 11, 28, 38, 79, 80.

7.  Plaintiff's noise related hearing loss qualifies as a disability under the Rehabilitation Act. Exhibit 2, Dempsey Deposition at 12, 43, 44; Exhibit 10, Letter from Valerie Sutton, dated May 31, 2005 with audiogram.

8.  Plaintiff was qualified individual to work as a Stock Clerk after he was medically cleared in July 2006. Exhibit 1, Amended Complaint ¶ 11; Exhibit 2, Dempsey Deposition at 12, 27, 29, 31, 43, 44, 153; Exhibit 13, Letter for Dr. Hakim, dated July 7, 2006

7

9. Plaintiff was not provided a reason for his termination in November 2007. Exhibit 2, Dempsey Deposition at 57.

10. Plaintiff was not provided a written reprimand for any performance issue between October 2006 and November 2007. Exhibit 2, Dempsey Deposition at 57, 153.

11. Plaintiff complained for several years about the noise he was being exposed to. Exhibit 2, Dempsey Deposition at 49-50, 107, 109, 110; Exhibit 9, Plaintiff's Reasonable Accommodation Requests; Exhibit 3, Rikard Deposition at 12.

12. Plaintiff submitted weekly reports regarding the problem with the noise and how it was affecting his hearing. Exhibit 2, Dempsey Deposition at 44, 151; Exhibit 4, Bertagnolli Deposition at 33, 43.

13. Any action taken by management to address the noise from the bells and bull horn was not effective. Exhibit 2, Dempsey Deposition at 153.

14. Plaintiff provided alternatives to the use of the bells and bull horn. Exhibit 2, Dempsey Deposition at 110.

15. Plaintiff's requests to WMATA employees was thing his job duties and consistent with what he was expected to do. Exhibit 2, Dempsey Deposition at 25, 52-53, 57.

16. Plaintiff suffered emotional distress. Exhibit 2, Dempsey Deposition at 25, 27, 29, 30, 31, 32, 33, 39-53, 60, 74, 74, 101, 131, 132.

17. Plaintiff lost income. Exhibit 2, Dempsey Deposition at 102, 132.

Respectfully submitted,

GEBHARDT & ASSOCIATES, LLP.

   /s/ *Donna Williams Rucker*

By:    Donna Williams Rucker, #04180
       1101 17th Street, N.W.
       Suite 807
       Washington, DC  20036-4716
       (202) 496-0400 (ph)
       (202) 496-0404 (fax)
       ruck92@aol.com
       drucker@gebhardtlaw.com

October 30, 2009          Counsel for Plaintiff

IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| JOHN DEMPSEY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: 08-2145 (PJM) |
| | * | |
| WMATA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FACTUAL BACKGROUND[1]

1.  Defendant's Statement: Plaintiff was a Stock Room Clerk A at the Shady Grove at WMATA.
    **Plaintiff's Response: This is not a material fact.  Plaintiff admits.**

2.  Defendant's Statement: At the Shady Grove location, WMATA repairs and maintains a portion of its rail car fleet.
    **Plaintiff's Response: This is not a material fact.  Plaintiff admits.**

3.  Defendant's Statement: The facility is a three story concrete building.
    **Plaintiff's Response: This is not a material fact.  Plaintiff admits.**

4.  Defendant's Statement: Plaintiff worked on the lower level.
    **Plaintiff's Response: This is not a material fact.  Plaintiff admits.**

5.  Defendant's Statement: Loud bells sound when the lifts are raising so that everyone is satisfied to avoid harm.
    **Plaintiff's Response: This is not a material fact.  Plaintiff admits that "loud bells sound when the lifts are raising" portion of the sentence. The portion stating "so that everyone is satisfied to avoid harm" is confusing so that Plaintiff can neither admit nor deny.  Exhibit 2, Dempsey Deposition at 111, 112.**

6.  Defendant's Statement: The volume of these bells are within the limits set by the Maryland Occupational Safety and Health Administration ("MOSH").
    **Plaintiff's Response: This is not a material fact.  Plaintiff admits.**

---

1 Because Defendant did not submit a Statement of Material Facts Not In Dispute, Plaintiff will respond to the cited sentences in its Statement of Facts in its stead.

7.  Defendant's Statement: In addition to handing out materials and parts and maintaining inventory, part of Dempsey's job was to "operate[] a variety of machinery and self-propelled material handling equipment including pallet trucks, hand trucks, forklifts, stock pickings, including wire cutting equipment in a careful and safe manner at all times."
    Plaintiff's Response:  Plaintiff admits.

8.  Defendant's Statement: Dempsey was required to use forklifts to unload trucks and move pallets of material.
    Plaintiff's Response: Plaintiff admits.

9.  Defendant's Statement: Mr. Dempsey has used insulin to control his diabetes since age 12.
    Plaintiff's Response: Plaintiff admits.

10. Defendant's Statement: He is required to check his blood sugar levels 8-12 times daily.
    Plaintiff's Response: Plaintiff admits.

11. Defendant's Statement: As long as his blood sugar levels are properly maintained, he can engage in any physical activity he chooses.
    Plaintiff's Response: This is not a material fact.  Plaintiff admits.

12. Defendant's Statement: He can drive a car.
    Plaintiff's Response: This is not a material fact.  Plaintiff admits.

13. Defendant's Statement: He does not contend that his hearing loss interfered with his ability to perform his job, but he filed a workers' compensation claim alleging that his hearing loss was due to the loud noises in the workplace.
    Plaintiff's Response: Plaintiff admits; however, Plaintiff is not waiving his hostile work environment claim.

14. Defendant's Statement: WMATA denied the claim.
    Plaintiff's Response: This is not a material fact.  Plaintiff admits.

15. Defendant's Statement: He did not appeal.
    Plaintiff's Response: This is not a material fact.  Plaintiff admits.

16. Defendant's Statement: Periodically, Dempsey had episodes at work where he became hypoglycemic and disoriented.
    Plaintiff's Response: Plaintiff admits.

17. Defendant's Statement: Dempsey's medications for high blood pressure and diabetes were not working together properly.

**Plaintiff's Response: Plaintiff admits with respect to the time prior to his medical discharge.**

18.   Defendant's Statement: Often fellow employees gave him food, candy, or glucose for his diabetes.
      **Plaintiff's Response: Plaintiff denies to the extent that this statement exaggerates the frequency of the times Plaintiff was provided food and candy.  Further, Plaintiff was not provided glucose by his co-workers. Exhibit 2, Dempsey Deposition at 93.**

19.   Defendant's Statement: Frequently, WMATA made 911 calls because of these episodes.
      **Plaintiff's Response: Plaintiff denies to the extent that this statement exaggerates the frequency of the times that 911 calls were made.  Exhibit 2, Dempsey Deposition at 93.**

20.   Defendant's Statement: Dempsey's interpersonal relations with his co-workers became a problem and he was counseled about his inability to get along with others.
      **Plaintiff's Response: Plaintiff denies.  Plaintiff required his co-workers to provide acquisition slips in accordance with the Agency's policies and procedures.   His co-workers did not like be made to follow these regulations and complained.  Exhibit 2, Dempsey Deposition at 25, 52-53, and 57.**

21.   Defendant's Statement: In early 2006, the frequency of Plaintiff's episodes increased and he suffered an [sic] hypoglycemic attack while driving a forklift.
      **Plaintiff's Response: Plaintiff admits.  However, Plaintiff's episodes increased only after his medication was changed, which prior to Plaintiff rarely had a hypoglycemic episode.  Further, after his medication was corrected, Plaintiff did not have any hypoglycemic episode.  Exhibit 2, Dempsey Deposition at 38.**

22.   Defendant's Statement: The forklift became pinned against a wall and Plaintiff had to be rescued.
      **Plaintiff's Response: Plaintiff admits.**

23.   Defendant's Statement: Because of the forklift incident, his supervisor required him to report to WMATA's Medical Office for a medical evaluation.
      **Plaintiff's Response: Plaintiff admits.**

24.   Defendant's Statement: Following the evaluation, Dr. Desmond Johnson ruled him medically disqualified to perform the duties of a stockroom clerk.
      **Plaintiff's Response: Plaintiff admits, but notes that Plaintiff's treating physician and an independent medical examiner cleared Plaintiff to work.**

11

**Exhibit 12, Letter from Dr. Naglieri, dated 9/15/06; Exhibit 13, Letter from Dr. Hakim, dated July 7, 2006.**

25.   Defendant's Statement: Section 124 provides for the placement of a medically disqualified employee on leave status for three years, during which time the employee receives [sic] is eligible to apply for other jobs within WMATA.
**Plaintiff's Response: This is not a material fact. Plaintiff admits.**

26.   Defendant's Statement: Dr. Johnson determined that, in his medical opinion, Mr. Dempsey posed a significant risk to himself and others performing the essential functions of the position.
**Plaintiff's Response: Plaintiff denies. Exhibit 5, Johnson Deposition at 101.**

27.   Defendant's Statement: Dempsey's personal physician disagreed with Dr. Johnson's diagnosis and the conclusion regarding the risk his unstable diabetes posed.
**Plaintiff's Response: Plaintiff admits.**

28.   Defendant's Statement: Dr. Naglieri found that Dempsey had corrected the medical issues that had caused the problems, and accordingly, WMATA returned Dempsey to duty in September 2006.
**Plaintiff's Response: Plaintiff denies. Plaintiff was reinstated in October 2006. Exhibit 2, Dempsey Deposition at 29; Exhibit 14, Email from Lawrence Chavis, dated 9/29/2006.**

29.   Defendant's Statement: Dempsey filed a grievance to recover lost benefits during the period of his Section124 [sic] leave and WMATA agreed to reinstate the benefits.
**Plaintiff's Response: This is not a material fact. Plaintiff admits. Plaintiff is not seeking back-pay as a remedy but pain and suffering for the six months he was not allowed to return to work. Also, there was a significant delay in paying Plaintiff his lost benefits that could be a hardship. Exhibit 2, Dempsey Deposition at 102.**

30.   Defendant's Statement: After his return to work, Dempsey's problems with his co-workers remained a problem, and his supervisor continued to receive complaints from his co-workers.
**Plaintiff's Response: Plaintiff denies. Plaintiff required his co-workers to provide acquisition slips in accordance with the Agency's policies and procedures. His co-workers did not like be made to follow these regulations and complained. Exhibit 2, Dempsey Deposition at 25.**

31.   Defendant's Statement: On January 4, 2007, Mr. Dempsey was referred for medical evaluation again, but Dr. Johnson found him still able to perform his job based upon his doctor's certification.

**Plaintiff's Response**: This is not a material fact. Plaintiff admits.

32.   **Defendant's Statement**: In November 2007, his conduct reached a breaking point during an event where he refused to unload a truck because it would require him to work overtime.
      **Plaintiff's Response**: **Plaintiff denies. Plaintiff did not refuse to unload a truck because it would require him to work overtime. Plaintiff did unload the truck but had no means of carrying the parts into the warehouse. Further, Plaintiff's supervisor did not ask him to work overtime. Exhibit 2, Dempsey Deposition at 69, 70, 72.**

33.   **Defendant's Statement**: Dempsey alleges that he was told to retire or be terminated.
      **Plaintiff's Response**: **Plaintiff admits.**

34.   **Defendant's Statement**: Dempsey retired and, within three months, was re-employed as a postal worker, a job for which he had applied before he decided to retire from WMATA.
      **Plaintiff's Response**: **Plaintiff denies. In need of income, Plaintiff applied to USPS while on unpaid medical leave because he was uncertain if he was ever going to be reinstated by Defendant. Exhibit 2, Dempsey Deposition at 101, 120, 124.**

35.   **Defendant's Statement**: He applied for the post office job "because [he] didn't much care for the stress" on the job at WMATA.
      **Plaintiff's Response**: **Plaintiff denies. In need of income, Plaintiff applied to USPS while on unpaid medical leave because he was uncertain if he was ever going to be reinstated by Defendant. Exhibit 2, Dempsey Deposition at 101, 120, 124.**

Respectfully submitted,

GEBHARDT & ASSOCIATES, LLP.

_/s/ Donna Williams Rucker_

By:   Donna Williams Rucker, #04180
      1101 17th Street, N.W.
      Suite 807
      Washington, DC  20036-4716
      (202) 496-0400 (ph)
      (202) 496-0404 (fax)
      ruck92@aol.com
      drucker@gebhardtlaw.com

October 30, 2009                    Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| **JOHN DEMPSEY,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| v. | *   **Civil No.: 08-2145 (PJM)** |
| | * |
| **WMATA,** | * |
| | * |
| **Defendant.** | * |
| | * |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION SUMMARY JUDGMENT**

I.    **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff was diagnosed with Type 1 insulin-dependant diabetes at the age of 12. Exhibit 2, Dempsey Deposition at 79, 80. Plaintiff was hired by Defendant on April 12, 1979 as a custodian on the Metro's Red Line. Exhibit 2, Dempsey Deposition at 9, 10. Approximately 3 years later, Plaintiff applied for and was awarded a position as a Stock Clerk A. Exhibit 2, Dempsey Deposition at 17. Plaintiff remained in that position until the day that he medically discharged in May 2006. Exhibit 2, Dempsey Deposition at 17, 27.

In April 2006, Plaintiff was examined by Dr. Desmond Johnson, the Agency's physician. Exhibit 5, Johnson Deposition at 34, 46. A week later, Dr. Johnson medically disqualified Plaintiff based on his diabetes and pending medical information from his treating physician. Exhibit 5, Johnson Deposition at 52-53; Exhibit 6, Wynne Deposition at 61. In July 2006, Plaintiff's treating physician, Dr. Majd Hakim, cleared Plaintiff to return to work. Exhibit 2, Dempsey Deposition at 31, 148; Exhibit 13, Letter from Dr. Hakim. After Plaintiff's treating physician cleared him to work, Plaintiff attempted to return to work. In August 2006,

14

Plaintiff filed a claim with the EEO Civil Rights Office alleging discrimination based on his disability and hostile work environment. He noted in his complaint, among other things, that Dr. Hakim's letter cleared him to work. Exhibit 6, Wynne Deposition at 19. Unfortunately, Dr. Johnson refused to clear Plaintiff despite having read Dr. Hakim's report and agreeing that beta blockers could mask Plaintiff's hypoglycemic symptoms and that Plaintiff's diabetes seemed to be under control. Exhibit 5, Johnson Deposition at 84, 85-86, 96-97,100; Exhibit 14, Wynne Deposition at 58.

Since Defendant refused to accept Dr. Hakim's Report and because of Dr. Johnson's differing medical opinion, Plaintiff saw Dr. Rosali Naglieri, an Independent Medical Examiner that was chosen by the Agency, in September 2006. Dr. Naglieri's examination and subsequent report confirmed what Dr. Hakim stated in her report, namely that Plaintiff could return to work. Exhibit 2, Dempsey Deposition at 32; Exhibit 5, Johnson Deposition at 106; Exhibit 12, Letter from Dr. Naglieri, dated 9/15/06; Exhibit 13, Letter from Dr. Hakim, dated July 7, 2006. Dr. Johnson subsequently cleared Plaintiff to return to work solely based upon Dr. Naglieri's recommendation in her Independent Medical Examination. Exhibit 5, Johnson Deposition at 107; Exhibit 6, Wynne Deposition at 56.

Approximately six months after being medically discharged, in October 2006, Plaintiff was reinstated to his Stock Clerk A position at WMATA. Exhibit 2, Dempsey Deposition at 29. In November 2007, Plaintiff was taken aside and informed by his supervisor that he was preparing Plaintiff's termination papers but he would not process them if Plaintiff resigned. Exhibit 2, Dempsey Deposition at 60, 74, 75. Plaintiff chose involuntary resignation. Exhibit 2, Dempsey Deposition at 32. Plaintiff's supervisor never gave him the exact reason that he was being terminated. Exhibit 2, Dempsey Deposition at 57.

15

After exhausting his remedies at the Equal Employment Commission, Plaintiff filed his Complaint with this Court on August 18, 2008, which alleged violation of Title VII, Intentional Infliction of Emotional Distress, Negligence, and violation of the Rehabilitation Act. Dkt. 1. With the Court's permission, Plaintiff subsequently filed an Amended Complaint on November 24, 2008. Dkt. 12. Defendant files its Answer thereto on December 18, 2008. Dkt. 16. On October 2, 2009, Defendant filed its Motion for Summary Judgment. Dkt. 31. Plaintiff now submits his Opposition to Defendant's Motion for Summary Judgment.

## II.      GOVERNING STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is "no genuine issue as to any material fact." Fed. R. Civ. P. 56. A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial - - whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). A motion for summary judgment should be granted, when, upon review of all evidence construed in favor of the nonmoving party, the court concludes that a jury could not reasonably find in favor of the nonmovant. *Id.*, 477 U.S. at 252. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial," the moving party is "entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for a nonmoving party. *Id.* In

16

other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict. *Id.* As the Fourth Circuit explained,

> [W]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to a make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted).

As will be demonstrated below, Plaintiff has adduced ample evidence to allow his claims to proceed to trial.

## III.   ARGUMENT

Defendant asks the Court to grant summary judgment on Plaintiff's Rehabilitation Act claim on the ground that it accommodated his disabilities. However, as argued below, Plaintiff has more than met his burden of producing sufficient evidence from which a reasonable jury could find that he was unlawfully discriminated against, that Defendant refused to accommodate Plaintiff's disabilities (diabetes and work-related hearing loss), and that Defendant unlawfully subjected Plaintiff to a hostile work environment.

### A.   Plaintiff's has presented sufficient evidence to establish that a jury would find that he was qualified for his job and that his diabetes and work-related hearing loss are disabilities under the Rehabilitation Act.

The Rehabilitation Act prohibits federal agencies from discriminating in employment on the basis of disability. The Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). To establish a violation of the Rehabilitation Act, a plaintiff must prove: (1)

17

that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that

he was excluded from the benefit due to discrimination solely on the basis of the disability. *Doe*

*v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir. 1995).

To sustain a disability claim under the Rehabilitation Act, a plaintiff must as a

threshold matter establish that he has a disability. In *Sutton v. United Airlines*, 527 U.S. 471, 483

(1999), the Supreme Court stated that "whether a person has a disability . . . is an individualized

inquiry." In *Albertson's, Inc. v. Kirkburg*, 527 U.S. 555, 566 (1999), the Court stated that there

was a "statutory obligation to determine the existence of disabilities on a case-by-case basis."

The Court further stated that "[t]he Act expresses that mandate clearly by defining 'disability'

'with respect to an individual,' and in terms of the impact of an impairment on 'such

individual[.]'" *Id.* (internal citations omitted).

An "individual with a disability," within the meaning of the Rehabilitation Act, is

an individual who has "a physical or mental impairment that substantially limits one or more

major life activities of such individual; . . . a record of such an impairment; or . . . [is] regarded

as having such an impairment." *See* 29 U.S.C. § 705(20)(B) (incorporating definition from the

ADA); 42 U.S.C. § 12102(1) (ADA's definition of disabled individual).

A major life activity is an activity that an average person can perform with little

or no difficulty. Regulations implementing Section 504 of the Rehabilitation Act define "major

life activities" as "functions such as caring for one's self, performing manual tasks, walking,

seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); 29

C.F.R. § 1630.2(i) (2004). However, these activities are examples and are not exclusive of other

potential major life activities. *Bragdon v. Abbott*, 524 U.S. 624 (1998). The Fourth Circuit had

concluded that the "the term 'major life activities' refers to 'those activities that are of central importance to daily life,'" *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 274 (4th Cir. 2004) (quoting *Toyota Motor Mfg.*, 534 U.S. at 197) and "that that average person in the general population can perform with little or no difficulty." *Id.* (internal quotation marks omitted). Further, when considering whether an impairment is "substantially limit[ing]," a court should examine the following factors: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *See* 29 C.F.R. § 1630.2(j)(2).

Here, Defendant cannot dispute that Plaintiff is disabled, for the purposes of the Rehabilitation Act, as Plaintiff's permanent and long-term physical impairments of diabetes and work-related hearing loss substantially limits major life activities such as caring for himself, eating, waste elimination, and hearing. Exhibit 3, Rickard Deposition at 55 (stating Plaintiff would have a disability if "his disability would prohibit him from doing normal routine things: eating, walking, working, running, things of that nature . . . ."); *see also* 29 C.F.R. § 1630.2(h)(1) (defining physical impairment); 45 C.F.R. § 84.3(j)(2)(ii) (providing examples of major life activities); 29 C.F.R. § 1630.2(i) (2004) (providing examples of major life activities); *Waldrip v. General Electric Co.*, 325 F.3d 652, 655 (5th Cir. 2003) (holding eating to be a major life activity); *Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003) (holding eating to be a major life activity); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999) (holding eating to be a major life activity). Plaintiff has been a diabetic for about 4 decades and began suffering from work-related hearing loss in 2004. Exhibit 1, Amended Complaint at ¶ 13, 15, 18, 26; Exhibit 2, Dempsey Deposition at 8, 12; *see* Defendant's Motion at 3 (conceding that Plaintiff has Type 1

19

diabetes and some degree of hearing loss).  Neither of these medical conditions will improve overtime and, in fact, will likely worsen over time.

In 2005, Plaintiff was diagnosed with hearing loss and was required to wear a hearing aid in his left ear.  Exhibit 2, Dempsey Deposition at 43; Exhibit 10, Letter from Valerie Sutton, dated May 31, 2005; Exhibit 5, Johnson Deposition at 31.  In her letter, Audiologist Sutton stated that Plaintiff had a "moderate, sensori-neural hearing loss right side and a severe, sensori-neural loss on the left ear."  She further stated that Plaintiff is "unable to hear the softer, high pitched consonant sounds, such as /s,/ [sic] /p/, /th/, /f/, or /t/."  Exhibit 10, Letter from Valerie Sutton, dated May 31, 2005.  Exhibit 10, Letter from Valerie Sutton, dated May 31, 2005.  Moreover, Plaintiff has testified that during a conversation where he was approximately four to five feet from the person speaking, he "would lose bits and pieces of [the] conversation because [he] could not hear [the person speaking]."  Exhibit 2, Dempsey Deposition at 44.

Diabetes is a serious, lifelong condition that has adversely affected and limited Plaintiff in several ways.  It is also a permanent condition and while its symptoms and complications may vary in their intensity from day to day, the risks always remain.  Because of his diabetes, Plaintiff has to undergo a lifelong process on insulin injections everyday.  Exhibit 2, Dempsey Deposition at 9, 10, 81-82.  Further, his has to remain vigilant over his eating habits (including types of foods that he eats, the portion size, how often he eats, and when he eats) and must constantly regulate his food based upon his insulin and activity level.  *Id.* at 81.  Essentially, because of his diabetes, Plaintiff does not have the choice of whether to eat or not to eat and his ability to metabolize food is difficult and erratic.  Exhibit 3, Rikard Deposition at 42 (acknowledging Plaintiff had to eat to control his diabetes).  Thus, Plaintiff's perpetual, severely restrictive, and highly demanding diabetes regimen substantially limits his major life activity

20

eating and waste elimination.

Moreover, Defendant has conceded that it regarded Plaintiff as having a disability when it argues "there is no material disputed issue of fact that they [Plaintiff's reasonable accommodation requests] were accommodated." Defendant's Motion at 2; Exhibit 2, Dempsey Deposition at 12. Defendant, with regard to his diabetes, accommodated his disability by providing him with small breaks. Exhibit 3, Rikard Deposition at 34. Further, in its Motion for Summary Judgment Defendant further concedes Plaintiff's disabilities because it does not provide an argument for their "dispute that plaintiff had disabilities within the definition of the Rehabilitation Act." Defendant's Motion at 1. It is apparent that it "assumes [Plaintiff is disabled] for purposes of this Motion" because it cannot legitimately argue to the contrary. Defendant's Motion at 1. It is illogical to say that an employee has a medical condition that requires an accommodation but in the same vein argue that the medical condition being accommodated was not a disability, which is the position Defendant has taken. Exhibit 3, Rikard Deposition at 45.

There further can be no doubt that Plaintiff is a "qualified individual" for purposes of the Rehabilitation Act. A "[q]ualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 16 C.F.R. 1630.2(m). It is undisputed that Plaintiff performed the essential functions of a Stock Clerk A for almost a decade prior to his termination in May 2006 and after he was reinstated on October 2006 by WMATA until he retired, and that Plaintiff is therefore a qualified individual with a disability. Exhibit 1, Amended Complaint at ¶ 11; Exhibit 2, Dempsey Deposition at 27,

21

29. Plaintiff, prior to being forced to retire, had not been counseled for any performance related issue. Exhibit 2, Dempsey Deposition at 57, 153. Further, Plaintiff's physician cleared him to be medically fit to return to work in July 2006. Exhibit 2, Dempsey Deposition at 31, 153; Exhibit 13, Letter from Dr. Hakim, dated July 7, 2006.

### B. Plaintiff has produced sufficient evidence in support of his failure to accommodate claim under the Rehabilitation Act.

In a failure to accommodate case, a plaintiff makes out a *prima facie* case by demonstrating "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of is disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations." *Rhoads v. Federal Deposit Insurance Corporation*, 257 F.3d 373 (4th Cir. 2001).

### 1. Defendant has not shown that it met its legal duty to reasonably accommodate Plaintiff's disability (diabetes).

Here, Defendant argues that Plaintiff's failure to accommodate claim must fail because it reasonably accommodated his diabetes disability by granting his request to check his blood sugar and eat small amounts of food during the day. Defendant's Motion at 11. However, Defendant's argument is misleading. Plaintiff does not take issue with the Agency's decision to place him on Section 124 leave without pay while his medication was askew. Plaintiff's failure to accommodate his disability (insulin-dependant diabetes) claim is based on Defendant's failure to accommodate his requests to return to his job when he was cleared to return to work.

Plaintiff is experienced in his ability to feel his symptoms of low blood sugar (hypoglycemia) and can easily counter a hypoglycemic attack by eating a piece of candy, drinking a soda, or take some other available simple sugar, and then stop what he was doing to

get more substantial food.  Plaintiff rarely, if ever, had a major hypoglycemic episode until 2006 when his doctor changed his medication, which caused him to be unable to feel his blood sugar level drop.  Exhibit 1, Amended Complaint ¶ 19; Exhibit 2, Dempsey Deposition at 28. Further, Plaintiff did not have an episode after his medication was corrected, which is evidence of his ability to accurately recognize and correct the symptoms of hypoglycemia that allegedly made him dangerous to himself and others when his medications are in-line.  Exhibit 2, Dempsey Deposition at 38.

In July 2006, Plaintiff's treating physician cleared him to work.  Exhibit 2, Dempsey Deposition at 31; Exhibit 13, Letter from Dr. Hakim, dated July 7, 2006.  "[T]he treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *see also Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (holding that "[the treating physician] rule requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence.").  A month later Plaintiff filed a reasonable accommodation claim requesting that he be returned to work on the basis that Dr. Hakim's letter cleared him to work. Exhibit 3, Rikard Deposition at 13.  However, Plaintiff was not able to return to work solely because Dr. Johnson, an independent contracting doctor who is paid by Defendant, determined Plaintiff was unable to return to work.  Exhibit 5, Johnson Deposition at Exhibit 5, Johnson Deposition at 17-18, 84, 85-86, 96-97,100; Exhibit 14, Wynne Deposition at 58.  Dr. Johnson testified that his position was that an insulin-dependent diabetic (Plaintiff) "who are prone to bouts of hypoglycemia, regardless of how much precautionary input is . . . the risk of hypoglycemia is still significant" and he therefore felt that "it would have been unsafe that [Plaintiff] function in that position [Stock Clerk A]."  Exhibit 5, Johnson Deposition

23

at 101-101, 119-120; Exhibit 14, Wynne Deposition at 58.

In September 2006, Dr. Naglieri, the Independent Medical Examiner chosen by Defendant, medically cleared Plaintiff to return to work as a Stock Clerk A. Exhibit 12, Letter from Dr. Naglieri, dated 9/15/06. In apposite of his reasoning for initially medically disqualifying Plaintiff from a job that he had been performing for approximately 20 years and without any further examination, Dr. Johnson medically cleared Plaintiff based only upon the recommendation set forth in the Independent Medical Examination Report. Exhibit 5, Johnson Deposition at 107, 111. Most alarming is the fact that Dr. Johnson gave no change in circumstances to support his change in opinion, he simply stated he changed his position "because we always go along with the recommendations of the IME." *Id.* at 109. In light of this testimony, Defendant's argument that it reasonably accommodated Plaintiff is unfounded and accordingly should not be afforded judgment as a matter of law.

> **2.    Defendant has not shown that it met its legal duty to reasonably accommodate Plaintiff's disability (hearing loss).**

Here, Defendant argues that Plaintiff's failure to accommodate claim must fail because it reasonably accommodated his hearing loss disability by granting his request that the volume of bells be lowered by placing rags in the bells to lower their volume. Defendant's Motion at 11. Again, Defendant's argument is misleading because the rags were only temporarily placed in bull horn and bells. Exhibit 2, Dempsey Deposition at 47, 49, 153; Exhibit 11, Photos of bull horn and muffled bell. Further, the placing of the rags was not an official accommodation sanctioned by Defendant or management. Exhibit 3, Rikard Deposition at 25-26, 29.

In 2004, Plaintiff began properly and repeatedly requesting a reasonable

accommodation for his work-related hearing loss. Exhibit 2, Dempsey Deposition at 49-50, 107, 109, 110 (requested accommodation flashing signals, strobe light, or to turn the bell around); Exhibit 9, Plaintiff's Reasonable Accommodation Requests; Exhibit 3, Rikard Deposition at 12; *see* EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disability Act, Question No. 4. Plaintiff testified that he "had addressed [the bull horn and bell noise] several times with [his] immediate supervisors. [W]eek after week after week I wrote, '[h]earing loss due to bells, bull horns. Please help me fix this problem.'" Exhibit 2, Dempsey Deposition at 44; Exhibit 4, Bertagnolli Deposition at 33, 43. Each time his request for an accommodation was either denied or ignored. Exhibit 2, Dempsey Deposition at 44, 51; Exhibit 3, Rikard Deposition at 33.    Plaintiff's initial requests for an accommodation "trigger[ed] the employer's obligation to participate in the interactive process [of] fashioning a reasonable accommodation]." *Lawrence v. Nat'l Westminster Bank*, 98 F.3d 61, 70 n.11 (3d Cir.1996).    Despite providing several creative ways to accommodate him, Defendant only temporarily placed rags in the bells to reduce their volume after he made his initial request. *Ralph v. Lucent Technologies, Inc.*, 135 F.3d 166, 172 (1st Cir. 1998) (stating the obligation to provide a reasonable accommodation is a continuing one); Exhibit 2, Dempsey Deposition at 47, 49, 153. Defendant did not meet its obligation because the accommodation was not effective. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). Further, once Plaintiff made his reasonable accommodation for noise reduction, all of which were feasible, Defendant, in violation of its own reasonable accommodation policies,  failed to show that any of these accommodations would cause them an undue hardship. *U.S. Airways v. Barnett*, 535 U.S. 391, 401-402 (2002); Exhibit 9, WMATA Americans with Disabilities Act Employment Policy Instruction.

**C.    Plaintiff has produced sufficient evidence to support his hostile work environment claim.**

Defendant does not directly challenge Plaintiff's hostile work environment claim but disputes Plaintiff's constructive discharge, which is based, in part, on being subjected to a hostile work environment.

To prevail on a hostile work environment claim under the Rehabilitation Act, a plaintiff must prove that he: (1) is a qualified individual with a disability; (2) was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis for imputing liability to the employer. *Fox v. GMC*, 247 F.3d 169, 177 (4th Cir. 2001). Factors to be considered in analyzing the objective component include the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating rather than being a mere offensive utterance, and whether it unreasonable interfered with a plaintiff's work performance. *Id.* at 178.

As noted above, Defendant was removed in May 2006 and placed him on unpaid leave. Exhibit 2, Dempsey Deposition at 27.  On July 2006, he was cleared by his physician to be put back to work.  Exhibit 2, Dempsey Deposition at 31; Exhibit 13, Letter from Dr. Hakim, dated July 7, 2006.  However, despite his repeated requests and medical documentation, Defendant refused to reinstate Plaintiff.  For 6 months, Plaintiff was out of work with no income and no guarantee that income was forthcoming anytime soon. Exhibit 2, Dempsey Deposition at 29.  He needed to be paid in order to "pay the mortgage, pay the groceries, kids in college. We bought vacation property.  I mean, I had bills." *Id.* at 101.  During this time, he and his family were under "extreme stress". *Id.* at 30, 39-53 (explaining the stress of his job in detail).  He was

26

forced to put his home up for sale. *Id.* at 133. He was unable to afford his two daughters' college tuition payments. *Id.* at 131. As the primary breadwinner, he was devastated at the loss of his income. *Id.*

Even after he returned to work in October 2006, Plaintiff was further subjected to a hostile work environment. *Id.* at 29, 39-53. Further, Plaintiff was constructively discharged when his immediate supervisor forced him to retire or be terminated. *Id.* at 32, 33, 60, 74, 75. In his deposition, Plaintiff testified that "[t]hat the work environment . . . had become extremely pressurized. And I had an individual mechanic that came down to the storeroom, demanded, extremely rudely, using – well, frankly, just plain cussed me out." *Id.* at 25. He further testified that his co-worker subsequently "physically attacked me in my own work location, and then I was fired due to that investigation." *Id.* Because of the constant "stress, anxiety, torment, frustration" and his supervisor's threat, Plaintiff involuntarily resigned after over 3 decades of dedicated service at the Agency. *Id.* at 9, 10, 32, 33, 34.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff John Dempsey respectfully requests that the Court deny Defendant's Motion for Summary Judgment. A proposed order is filed herewith.

Respectfully submitted,

GEBHARDT & ASSOCIATES, LLP.

By:       /s/ *Donna Williams Rucker*
          Donna Williams Rucker, #04180
          1101 17th Street, N.W.
          Suite 807
          Washington, DC  20036-4716
          (202) 496-0400 (ph)
          (202) 496-0404 (fax)
          ruck92@aol.com
October 30, 2009          Counsel for Plaintiff

27