**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| JOHN DEMPSEY,            ) | |
|                                    ) | |
|    Plaintiff,     ) | |
|                                    ) | |
|    v.          ) | No. PJM-08-cv-2145 |
|                                    ) | |
| WASHINGTON METROPOLITAN         ) | |
| AREA TRANSIT AUTHORITY,         ) | |
|                                    ) | |
|    Defendant.      ) | |
|                                    ) | |

**WMATA'S MEMORANDUM OF POINTS AND AUTHORITIES
IN REPLY TO PLAINTIFF'S OPPOSITION TO WMATA'S MOTION FOR SUMMARY
JUDGMENT**

Defendant WMATA submits the following Reply in Support of its Motion for Summary Judgment in this case brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

Plaintiff's Opposition falls far short of demonstrating the necessary elements to create <u>material</u> issues of fact to defeat WMATA's Motion for three reasons. First, and most importantly, plaintiff has provided no evidence of motive – either through direct evidence of discriminatory intent or through evidence of pretext. Moreover, plaintiff completely fails to even mention the standard of proof under the Rehabilitation Act (as opposed to the Americans with Disabilities Act) – that he must establish a material disputed issue of fact that WMATA acted "<u>solely</u> on the basis of disability." Second, plaintiff does not dispute that WMATA engaged in the interactive process by considering and acting upon plaintiff's request for reasonable accommodation – he just argues that the response did not suit him. Third, plaintiff

ignores the Fourth Circuit's heightened burden of proof to establish a claim for constructive discharge – he just states in a conclusory manner that it is a material disputed issue of fact. For all of these reasons, WMATA's motion must be granted.

Plaintiff's Opposition addresses the issue of whether plaintiff's medical conditions constituted a covered disability. WMATA can demonstrate that plaintiff was not an individual with a disability because plaintiff testified in his deposition that he could engage in all of the normal major life activities as long as he kept his blood sugar stable. See Dempsey Dep. Exh. A to WMATA's Motion for Summary Judgment, at 82. A disability that is corrected by medication is not a covered disability under the law. Sanders v. FMAS Corp., 180 F. Supp. 2d 698, 704 (D. Md. 2001).[1] Moreover, plaintiff does not even argue that, with his hearing aid, he is unable to engage in major life activities. As plaintiff admits, he testified that, as long as his blood sugar was under control, he could engage in any activity he chose. Plaintiff's Opp. at 10, ¶11. Thus, neither claimed disability qualifies under the pre-2009 law. However, even if the Court disagrees with WMATA on this issue, WMATA is nonetheless entitled to summary judgment for the following reasons.

---

[1] Such a result would not follow under current law, due to the ADA Amendments of 2009, Pub. L. 110-325, 122 Stat. 3553 (2008), see Parker v. Midwest Air Traffic Control, 2009 U.S. Dist. LEXIS 40054 (W.D. Pa. May 12, 2009). All of Dempsey's allegations in this case pre-date the effective date of this law.

1.  <u>Plaintiff Fails to Present Evidence of Discriminatory Intent</u>.

The Rehabilitation Act of is not a disparate impact statute; it requires specific intent. Plaintiff must show that WMATA acted "solely because of" plaintiff's disability. As this Circuit stated in <u>Constantine v. Rectors & Visitors of George Mason Univ</u>., 411 F.3d 474 (4th Cir. 2005), "Although 'the ADA and Rehabilitation Act generally are construed to impose the same requirements,' we have recognized that the causation standards under Title II of the ADA and § 504 of the Rehabilitation Act are "significantly dissimilar.". . . A plaintiff seeking relief under Title II of the ADA must prove that disability "played a motivating role" in the adverse action, while a plaintiff seeking relief under § 504 of the Rehabilitation Act must prove that the defendants' discriminatory conduct was "solely by reason" of the plaintiff's disability. "<u>Id</u>. at 498 n.17 (quoting <u>Baird v. Rose</u>, 192 F.3d 462, 468-70 (4th Cir. 1999))." <u>Accord</u> <u>Soledad v. United States Dep't of Treasury</u>, 304 F.3d 500, 505 (5th Cir. 2002).

Plaintiff's Opposition focuses almost exclusively on the alleged failure to accommodate plaintiff's claimed disabilities; it never discusses WMATA's motives in failing to reasonably accommodate the disabilities. Nowhere, however does he even name one single person that made a negative comment about his alleged disabilities, as evidenced, <u>infra</u> by his inability to identify who allegedly told him to quit or be terminated. He alleges no harassing comments in the workplace or other specifically disability-oriented adverse conduct. The Rehabilitation Act is not a strict liability statute, but rather it requires <u>specific</u> intent.

3

2.  <u>WMATA Gave Plaintiff a Reasonable Accommodation</u>

The evidence shows that plaintiff made use of WMATA's procedures for requesting a reasonable accommodation. <u>See</u> Exhibit P to WMATA's Motion. A meeting of the disability accommodations panel determined that, since plaintiff had the ability to take short breaks on his job to eat snacks and check his blood sugar, he did not have a disability. <u>See</u> Exhibit Q. ("The ADA Panel met to review your request and has determined that no special accommodation needs to be made at this time since your position allows for at-will testing as it relates to your medical condition, which has been the standard practice."). WMATA also stuffed rags in the loud bells to lower their volume. <u>See</u> Exhibit 11 to Plaintiff's Opposition. This is evidence of the interactive process in action.

> To establish an ADA "failure to accommodate" claim Plaintiff must prove: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4)  that the [employer] refused to make such accommodations." <u>Rhoads v. Federal Deposit Ins</u>., 257 F.3d 373, 387 n. 11 (4th Cir. 2001). "Implicit in that fourth element is the requirement that the employee has, in good faith, engaged in an interactive process to identify, in cooperation with the employer, what would constitute a reasonable accommodation." <u>May v. Roadway Express, Inc</u>., 221 F. Supp. 2d 623, 627 (D. Md. 2002).

White v. Hedwin Corp., No. WMN-08-cv-1910, 2009 U.S. Dist. LEXIS 93020 *15 (D. Md. Oct. 5, 2009).[2]

Whether WMATA made reasonable accommodations is also beyond dispute. Dempsey admits he was allowed to take short breaks to check his blood sugar and snack. Dempsey De., Exh. A at 104. Dempsey further admits that the bells were muffled Id. at 47. He also admits that the bells complied with Maryland Occupational Safety and Health Administration ("MOSH") standards. Plaintiff's Opp. at 9. Plaintiff does not articulate clearly what is in dispute except to allege that it is the ultimate issue of reasonable accommodation. Plaintiff must do more to resist summary judgment – he must identify specific material facts that are disputed, not the legal conclusions that flow from those facts. He has not met this burden.

    3.    <u>Plaintiff Fails to Produce Evidence that Meets the Fourth Circuit's Standard for Constructive Discharge.</u>

The circumstance surrounding plaintiff's alleged constructive discharge is somewhat of a mystery, for he is unable to identify the person who told him to quit or be fired. He testified as follows:

```
16  Q   Why did you leave WMATA's employment in
17  October of 2007?
18  MS. RUCKER:  Objection as to the form of
19  the question.  You can answer.
20  THE WITNESS:  Stress, anxiety, torment,
21  frustrations.
22  BY MR. SHAFFER:
```

---

[2] The standards for a claim of failure to accommodate under the ADA and the Rehabilitation Act are the same, except that the Rehabilitation Act requires proof of specific intent. See Constatine, supra.

```
 1  Q    Did you resign?
 2  A    I did after speaking with --
 3  MS. RUCKER:  He just asked did you.  Just
 4  please answer his question. That's a yes or no
 5  answer.
 6  THE WITNESS:  Yes, or face termination
 7  again.
 8  BY MR. SHAFFER:
 9  Q    Who told you that if you didn't resign,
10  you would face termination again?
11  A    My immediate supervisor, the lady -- the
12  gentleman in HR.
13  Q    Who was your immediate supervisor at the
14  time that told you that you would face termination
15  if you didn't resign?
16  A    Wallace Ford.
17  Q    Who was the gentleman in HR you just
18  referred to?
19  A    I don't recall.  I had several meetings
20  with him.
21  MS. RUCKER:  I had lady in HR.  Was that
22  wrong?  I put lady.  There was no lady?

 1  THE WITNESS:  Yes, there was a lady that I
 2  spoke to in HR but that was a different matter.
 3  That was with 124.
 4  MS. RUCKER:  Okay.
 5  BY MR. SHAFFER:
 6  Q    Was your resignation in November of 2007
 7  voluntary?
 8  MS. RUCKER:  Objection.  You can answer.
 9  THE WITNESS:  I want to say it was forced.
10  BY MR. SHAFFER:
11  Q    Did you file a grievance in connection
12  with your termination in 2007?
13  A    I did not.
14  Q    Why not?
15  A    Because I elected to retire.
```

Exhibit A hereto (Dempsey Deposition) at 32-34 (emphasis added).

No one at WMATA had such a conversation, and plaintiff had the opportunity to take numerous depositions, in none of which did his counsel ask about this pivotal event. Plaintiff's claims are purely speculative "[C]onstructive discharge occurs when" an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." Johnson v. Sullivan, 764 F. Supp. 1053, 1067 (D. Md. 1991) (citations omitted). Again, the flaw in plaintiff's Opposition goes to his inability to ascribe any intent upon WMATA to discriminate. Nowhere does he cite any evidence that WMATA "deliberatively" made his working conditions such that he had no choice but to quit.

Without evidence of specific intent, plaintiff cannot have a Rehabilitation Act case nor can he establish a constructive discharge. Plaintiff devotes much space in his Opposition to establishing the allegation of the existence of a disability, and no space to his ultimate burden.

    4.    Dempsey was Properly Placed on Section 124 Leave.

Dempsey argues that his treating physician's opinion must be given greater weight that that of WMATA's medical office, citing two Fourth Circuit cases. Both of these cases deal with Social Security benefit decisions – an entirely different standard than the ADA; moreover, the cases have been superseded by statute.[3] When evaluating the "direct threat" that Dempsey posed to himself and others, WMATA had to err on the side of protecting Dempsey and his fellow employees

---

[3] Plaintiff cites Hunter v. Sullivan, 993 F.2d 1, 15 (4th Cir. 1992) and Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). *Shepards* lists these cases 16 times superseded by statute. See., e.g, Stroup v. Apfel, 2000 U.S. App. LEXIS 2750 (4th Cir. Feb. 24, 2000)Edwards v. Astrue, 2009 U.S. Dist. LEXIS 38610 (W.D. Va. Apr. 27, 2009)

from his admitted periods of hypoglycemia in the workplace, especially after the incident with the forklift, where someone could have been seriously injured. WMATA acted reasonably, however, in returning Dempsey to duty as soon as a third part IME physician verified that the medical imbalance (which Dempsey admits occurred) was resolved and he was therefore no longer posing a direct threat.

The Section 124 process is just that – a process.  And it is a process that worked as it was supposed to under the Collective Bargaining Agreement ("CBA") in the case at hand.  On April 24, 2006, plaintiff was medically disqualified by Dr. Johnson.  Plaintiff, not WMATA, waited until July 7, 2006 to get a letter from his treating physician stating that he was medically qualified.  The process under the CBA is then for Dr. Johnson to get a third-party IME to resolve the conflicting medical conditions, which is required by Section 104(g) of the CBA (Exhibit B hereto).  See Declaration of Edwin Waleryszak attached as Exhibit C hereto (explaining CBA process for medical disqualification.  He did so in August, but the first appointment he could get was in September; he then received Dr. Naglieri's report in September, and returned Dempsey to work promptly thereafter.  Dempsey grieved the process and it was settled, again, as contemplated by the CBA.  See Plaintiff's Opposition at 12, ¶19.  Plaintiff further states that he is not claiming any back pay as a result of being placed on Section 124 leave, and the grievance restored his benefits.  Id.  Any delay in the process was caused by plaintiff Dempsey, not by WMATA, and in  the end, the process worked according to the CBA, which takes precedence over the ADA.  US Airways, Inc. v. Barnett, 535

8

U.S. 391 (2002).  In <u>Barnett</u>, the Court held that an employer's sonority systems govern over any obligation to reasonably accommodate an employee's disability. <u>Id</u>. at 405.  The Court also recognized that the courts have "found that collectively bargained seniority trumps the need for reasonable accommodation in the context of the linguistically similar Rehabilitation Act." 535 U.S. at 403.  Thus, where the CBA was followed, as here, plaintiff has no Rehabilitation Act claim.

Plaintiff argues, however, that the placement on Section 124 status constituted a hostile work environment; however, other than conclusory statements, he fails to demonstrate what WMATA did <u>other than the compliance with the CBA</u> was so "severe and pervasive" so as to constitute harassment on account of his disability.  <u>Fox v. GMC</u>, 247 F.3d 169, 177 (4th Cir. 2001)(reversing jury verdict finding disability harassment because plaintiff did not provide sufficient evidence of hostile work environment).  Moreover, <u>Fox</u> requires some factual basis for imputing liability to the employer.  Again, plaintiff's case falls on his failure to ascribe any <u>intent</u> to discriminate on the part of any particular person.  Plaintiff was clearly an unhappy camper, but he puts forward no evidence that anyone was trying to make his worklife unhappy <u>solely because of his disability</u>.

    5.   <u>Conclusion</u>.

Plaintiff has failed to controvert defendant's evidence of legitimate business reasons for its actions.  Even if one were to accept everything plaintiff alleges in his opposition, the best one could conclude is that perhaps disability was a motivating factor in the actions WMATA took.  Nowhere, however, does plaintiff

create a material issue of fact that it was the "sole" factor nor does he identify, through either direct or circumstantial evidence, a motive to "deliberately" make the terms and conditions of his work so intolerable a reasonable person could not work under them.  Moreover, WMATA complied with the terms of the governing CBA in placing plaintiff on medical leave and removing him from it.  The fact is plaintiff just got fed up one day and quit for a more peaceful life at the Postal Service.  That is not a Rehabilitation Act case.

                                      Respectfully submitted,

                                      Carol B. O'Keeffe #04202
                                      General Counsel

                                      /s/ Mark F. Sullivan
                                      Mark F. Sullivan #17690
                                      Deputy General Counsel

                                      /s/ David J. Shaffer
                                      David J. Shaffer #13055
                                      Assistant General Counsel
                                      600 Fifth St., N.W.
                                      Washington, D.C. 20001
                                      (202) 962-2820
                                      Attorney for Defendant WMATA
                                      dshaffer@wmata.com